IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| VELMA AND LANDON TOWNSEND,<br>*Plaintiffs,*<br><br>v.<br><br>FEDERAL NATIONAL MORTGAGE ASSOCIATION, ET AL.<br>*Defendants.* | CASE NO. 3:12-cv-00045<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

Plaintiffs Velma and Landon Townsend ("Plaintiffs") commenced this action by filing a complaint in the Fluvanna County Circuit Court against the Federal National Mortgage Association ("Fannie Mae") and Samuel I. White, P.C. ("SIWPC"). Fannie Mae and SIWPC timely removed and filed a motion to dismiss. Plaintiffs then filed an Amended Complaint, in which they added Wells Fargo Bank, N.A. ("Wells Fargo") as a defendant. Plaintiffs seek to bring claims for breach of contract, violation of the Fair Debt Collection Practices Act, and to quiet title after an allegedly unlawful foreclosure on their real property. Fannie Mae, SIWPC, and Wells Fargo (collectively, "Defendants"), have moved to dismiss the Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, I will grant Defendants' motion in part and deny it in part.

I. BACKGROUND

Plaintiffs allege that at all times relevant to this case they owned a home in Scottsville, VA. In 2007, Plaintiffs entered into a mortgage loan in which they were the borrowers and American Home Mortgage ("American Home") was the lender. The loan was evidenced by a

note (the "Note") signed by Plaintiffs and secured by a deed of trust (the "Deed of Trust") also signed by Plaintiffs and recorded in the clerk's office of the Fluvanna County Circuit Court. American Home assigned the Note to Wells Fargo.

On July 17, 2011, Wells Fargo sent Plaintiffs an "acceleration notice," a letter informing them that their loan was in default for failure to make payments due and stating that "[u]nless the payments on your loan can be brought current by August 16, 2011, it will become necessary to require immediate payment in full (also called acceleration) of your Mortgage note and pursue the remedies provided for in your Mortgage or Deed of Trust, which include foreclosure." Wells Fargo sent another acceleration notice on August 22, 2011. According to the Amended Complaint, Wells Fargo also removed the original trustees on the Deed of Trust and appointed SIWPC as substitute trustee. On October 5, 2011, SIWPC sent Plaintiffs a letter informing them that SIWPC had been instructed to initiate foreclosure proceedings. The letter also provided information about the debt, including the identity of the creditor, the amount owed, and a procedure by which Plaintiffs could dispute the debt. SIWPC placed a foreclosure notice in a newspaper having a general circulation in Fluvanna County, and on November 10, 2011, SIWPC conducted a foreclosure auction at which Wells Fargo entered the highest bid. Wells Fargo subsequently transferred title of the property to Fannie Mae. Plaintiffs filed this suit seeking damages from Wells Fargo and SIWPC and seeking to quiet title to the property.

## II. LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a Rule

12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950–51 (2009). Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," *id.*, with all the allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor. *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). In sum, Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Consequently, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 129 S. Ct. at 1950.[1]

### III. DISCUSSION

#### A. Plaintiffs' Alleged Failure to Provide Notice of Suit

Defendants first argue that Counts One and Two of the Amended Complaint, which allege breaches of the terms of the Note and the Deed of Trust, must be dismissed because Plaintiffs did not give Wells Fargo the notice required by the Deed of Trust before filing this action. Section 20 of the Deed of Trust provides that:

---

[1] Federal Rule of Civil Procedure 10(c) provides that a copy of a written instrument that is an exhibit to a pleading is deemed a part of the complaint. *Thompson v. Greene*, 427 F.3d 263, 268 (4th Cir. 2005). In evaluating a motion to dismiss, the court may consider documents extrinsic to the complaint if they are "integral to and explicitly relied on in the complaint." *See Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 222–23 (4th Cir. 2009) (citing *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)); *see also Sec'y of State v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007); *Davis v. George Mason Univ.*, 395 F. Supp. 2d 331, 335 (E.D. Va. 2005). Here, Plaintiffs explicitly referenced in their complaint several exhibits that were attached to it. It is appropriate to consider those documents for the purpose of deciding this motion.

> Neither Borrower nor Lender may commence . . . any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.

In support of their argument, Defendants cite two Eastern District of Virginia cases that were dismissed solely based on similar failures to provide notice under deeds of trust containing the same language. *See Niyaz v. Bank of America*, No. 1:10cv796, 2011 WL 63655, at *2 (E.D. Va. Jan. 3, 2011) (dismissing complaint against loan originator, the owner of the debt obligation, the loan servicer, and the substitute trustee because all of the plaintiff's allegations arose "from action taken pursuant to the Deed of Trust"), *aff'd* 442 F. App'x 838 (4th Cir. 2011) (per curiam); *Johnson v. Countrywide Home Loans, Inc.*, No. 1:10cv1018, 2010 WL 5138392, at *2 (E.D. Va. Dec. 10, 2010).

Plaintiffs contend that Fannie Mae and SIWPC cannot raise § 20 as grounds for dismissal because they were not parties to the Deed of Trust. Furthermore, with respect to Wells Fargo, they argue that *Johnson* and *Niyaz* were wrongly decided and that this Court should instead follow *Bennett v. Bank of America, N.A.*, No. 3:12cv34, 2012 WL 1354546 (E.D. Va. Apr. 18, 2012), which addressed the same issue raised in *Niyaz* and *Johnson*. The defendant in *Bennett* also argued that the case should be dismissed because the plaintiff failed to provide notice of suit as required by the terms of the deed of trust. *Id.* at *5. Although the court agreed that "[u]nder Virginia law, a party who first materially breaches a contract cannot enforce that contract," *id.* (citing *Horton v. Horton*, 487 S.E.2d 200, 203 (Va. 1997)), the court also noted that "a court may rule on such an affirmative defense at the 12(b)(6) stage only if all facts necessary to the affirmative defense clearly appear on the face of the complaint." *Id.* (quoting *Goodman v.*

*Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007)) (internal quotation marks omitted). In *Bennett*, because "the Complaint [did] not indicate whether Bennett did, or did not, send such requisite notice," the court held that it could not address the defendant's argument at the motion to dismiss stage. *Id.*

I find that in this case, as in *Bennett*, the Amended Complaint does not indicate whether Plaintiffs sent written notice before commencing this action, as required by the Deed of Trust. As the *Bennett* court noted, the argument presented by Defendants is an affirmative defense, the consideration of which is "more properly reserved for consideration on a motion for summary judgment." *Id.* (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)). Therefore, I will not dismiss this case based on Plaintiffs' alleged failure to provide Defendants with written notice of this suit.

### B. Plaintiff's Claim for Breach of the Note and the Deed of Trust

Turning to the substance of the Amended Complaint, Plaintiffs allege in Count One that Defendants breached one provision of the Note and one provision of the Deed of Trust and that as a result, the foreclosure of Plaintiff's property was void or voidable. First, Plaintiffs allege that Defendants breached § 6(C) of the Note, which provides:

> If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

Second, Plaintiffs allege that Defendants breached § 22 of the Deed of Trust, which provides:

> Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument . . . . The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this

> Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.

According to Plaintiff, the two acceleration notices sent by Wells Fargo did not comply with § 6(C) of the Note or § 22 of the Deed of Trust. Specifically, Plaintiffs allege that Wells Fargo violated the terms of the Note and the Deed of Trust by: (i) inflating the amount required to avoid acceleration of the note and foreclosure by requiring payment of an amount not yet overdue; and (ii) failing to state that Plaintiffs could file a court action to assert defenses against acceleration and foreclosure. I will discuss each of these alleged breaches in turn.

### 1. Inflation of Amount Due

The first acceleration notice, dated July 17, 2011, stated that the total delinquency as of that date was $8,168.67, and read: "To avoid the possibility of acceleration, you must pay this amount on or before August 16, 2011." Plaintiffs do not dispute that this satisfied the 30-day notice period required by the terms of the Note and the Deed of Trust with respect to the amount due as of that date. But the notice also stated that "[f]or the loan to be current and not in default, *any additional monthly payments*, late charges, and other charges that may be due under the note, mortgage and applicable law after the date of this notice must also be paid." (Emphasis added). In other words, to cure the default that existed as of July 17, Plaintiffs would also have to make their regularly scheduled monthly payment, which was due on August 1, before the end of the 30-day cure period. Under the terms of the acceleration notice, if Plaintiffs failed to pay by August 16 both the amount in default as of July 17 and the amount due August 1, Wells Fargo had the right to proceed with acceleration.[2]

---

[2] The second acceleration notice, dated August 22, 2011, contains the same language and required an analogous procedure.

Plaintiffs claim that the acceleration notice violated the terms of the Note because it required payment of an amount that had not yet come due, let alone been defaulted on, to be paid in order to cure a pre-existing default. Plaintiffs suggest that once they were in default and had received notice of such, a subsequent failure to make their regular monthly payment during the 30-day cure period would constitute a separate default, and the bank would have to provide them with a new notice and give them 30 more days from the date of that new notice to cure the new, separate default.

Other federal courts in Virginia have rejected the very argument made by Plaintiffs in this case. *See Matanic v. Wells Fargo Bank, N.A.*, No. 3:12cv472, 2012 WL 4321634, at *4 (E.D. Va. Sept. 19, 2012) (addressing virtually identical facts and finding that "[r]equiring submission of the next regular monthly payment in order to cure default does not breach the agreement between the parties."); *Estrella v. Wells Fargo*, No. 2:11cv414, 2011 WL 6825619 (E.D. Va. Dec. 28, 2011); *see also Belote v. Bank of America, N.A.*, No. 3:12CV526, 2012 WL 6608973, at *3 (E.D. Va. Dec. 18, 2012). The court in *Matanic* stated that the acceleration notice's requirement that the borrower pay his regular monthly payment "was not a breach of the Note because it was a reminder to the borrower that paying the amount required to cure the default does not relieve him of paying the regularly scheduled payment due before the cure period ends." 2012 WL 4321634, at *4. The reason for this is that § 6(B) of the Note states that "[i]f I do not pay the full amount of each monthly payment on the date it is due, I will be in default." *See id.* Following the reasoning in *Matanic*, I also conclude that the acceleration letter's requirement that Plaintiffs make their regularly scheduled payment in order to cure their default does not violate the terms of the Note or the Deed of Trust.[3]

---

[3] Had Plaintiffs been able to cure the amount in default as of July 17, 2011, before their next payment came due, they almost certainly would have been entitled to a new notice and a fresh 30-day cure period if they subsequently

- 7 -

2. Adequacy of the Acceleration Notices

Plaintiffs also allege that the acceleration notices did not satisfy the terms of the Deed of Trust because they did not explicitly state that Plaintiffs could file a court action to assert defenses against acceleration and foreclosure. Section 22 of the Deed of Trust provides that an acceleration "notice shall further inform Borrower of the right to reinstate after acceleration and *the right to bring a court action* to assert the non-existence of a default or any other defense of Borrower to acceleration and sale." (Emphasis added). By contrast, the acceleration notices stated that "[i]f foreclosure is initiated, you have *the right to argue* that you did keep your promises and agreements under the Mortgage Note and Mortgage, and to present any other defenses that you may have." (Emphasis added). Plaintiffs argue that the difference in language matters because foreclosures in Virginia are almost always performed without the filing of a court action, so the "right to argue" mentioned in the acceleration notice effectively means the right to attempt to persuade the trustee or substitute trustee rather than the right to bring a lawsuit. According to Plaintiffs, by not tracking the language of the Deed of Trust exactly, Wells Fargo intended to steer challenges to foreclosure to a decision by a substitute trustee that Wells Fargo could select at its sole option, rather than a court, presumably because the substitute trustee selected by the bank would provide a friendlier decision-maker.[4]

Again, other federal courts in Virginia have rejected the same argument Plaintiffs make here. In *Cole v. GMAC Mortgage, LLC*, No. 1:10-cv-848, 2011 WL 4007672, at *3 (E.D. Va. Sept. 7, 2011), the court held that a notice informing borrowers that they have "the right to assert

---

failed to make the August 1 payment on time. Similarly, if they missed the August 1 payment, but were able to cure the amount in default as it existed on July 17 prior to the end of the cure period, they might have a more persuasive argument.

[4] In their response brief, Plaintiffs add that the acceleration notice inadequately conveyed the information required by the Deed of Trust in two other respects as well: (i) by implying that a borrower must wait until foreclosure is initiated to exercise the right to reinstate after acceleration; and (ii) weakening the language in the Deed of Trust describing the right "to assert the non-existence of a default or any other defense." These allegations do not appear in the Amended Complaint itself, so I do not address them.

or defend the non-existence of a default and [that they] may have other rights under state law" complied with the terms of a deed of trust identical to the relevant terms in the Deed of Trust in this case. The court held that such language "provides Plaintiffs with reasonable notice regarding the right to assert a legal defense despite the absence of the words 'to bring a court action.' Although Plaintiffs argue that [the lender's] failure to include this exact language is of consequence, any deficiency in that regard is immaterial." *Id.* The language in the acceleration notice in this case differs slightly from the language in the notice in *Cole*, but the same reasoning applies. In fact, in *Matanic*, 2012 WL 4321634, at *5, the court considered an acceleration notice containing the exact same operative language as that in this case, and similarly concluded that "the language used in the Acceleration Letter was slightly different from the language used in the Deed of Trust but in effect was the functional equivalent." In *Abrahams v. U.S. Bank, N.A.*, No. 1:12-cv-453, Dkt. No. 20 (E.D. Va. July 30, 2012), the court orally rejected the same argument and dismissed the case.

      The underlying rationale of these cases is that the specific language used to convey to borrowers what rights they have is not material to the essential purposes of a deed of trust. "The Supreme Court of Virginia has identified two essential purposes of a Deed of Trust: 'to secure the lender-beneficiary's interest in the parcel it conveys and to protect the borrower from acceleration of the debts and foreclosure on the securing property prior to the fulfillment of the conditions precedent it imposes.'" *Matanic*, 2012 WL 4321634 at *5 (quoting *Mathews v. PHH Mortg. Corp.*, 724 S.E.2d 196, 200 (Va. 2012)). Using the words "the right to argue" rather than "the right to sue" does not affect these essential purposes. *Id.* Thus, I conclude that the acceleration notices sent by Wells Fargo did not violate the terms of the Deed of Trust.

### C. The Alleged FDCPA Violation

Plaintiffs' claims in Counts Two and Three both arise out of an alleged violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692–1692p, by SIWPC. In Count Three, Plaintiffs claim that SIWPC violated the FDCPA by proceeding with foreclosure when the terms of the statute prohibited it from doing so. According to Plaintiffs, because Wells Fargo was aware of SIWPC's actions that allegedly violated the FDCPA and Fannie Mae was in privity with Wells Fargo, the foreclosure was invalid and Plaintiffs are entitled to bring an action to quiet title.[5] Based on this same alleged violation of the FDCPA, Plaintiffs claim in Count Two that Defendants breached the terms of the Deed of Trust because they incorporated "Applicable Law." Since Counts Two and Three both depend on whether Plaintiffs can state a plausible claim that SIWPC's actions violated the FDCPA, I will analyze that issue first.

Plaintiffs claim SIWPC's violation of the FDCPA arose from a letter SIWPC sent to Plaintiffs on October 5, 2011. The FDCPA requires a debt collector to send a debtor a written notice containing certain information about the debt it is attempting to collect. *See* 15 U.S.C. § 1692g(a). Section 1692g(b) provides that:

> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) of this section unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not

---

[5] The question whether Plaintiffs can bring an action to quiet title at all appears to be distinct from the question of whether they have a viable claim that Defendants violated the FDCPA. I will discuss the law regarding quiet title actions separately below.

>overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

The October 5 letter sent by SIWPC (attached to the Amended Complaint as Exhibit F) stated in all capital letters that it was a "NOTICE REQUIRED BY THE FAIR DEBT COLLECTION PRACTICES ACT" and informed Plaintiffs that SIWPC had been instructed to initiate foreclosure proceedings. In accordance with § 1692g(a), the notice required Plaintiffs to notify SIWPC in writing of any dispute within 30 days, and Plaintiffs allege that they sent such a written response within the 30-day period.[6] Plaintiffs argue that under the FDCPA, SIWPC could not proceed with foreclosure until it investigated the dispute raised in writing by the Plaintiffs and sent a response, along with a statement of the original creditor. They further allege that SIWPC sent no response to their dispute letter prior to the foreclosure, and that the foreclosure was therefore unlawful. Since SIWPC was acting as an agent of Wells Fargo, Plaintiffs argue, SIWPC's knowledge that collection activities should have ceased should be imputed to Wells Fargo, and the foreclosure should be set aside.

### 1. Is SIWPC Covered Under the FDCPA?

As a threshold matter, I must consider whether the FDCPA's definition of "debt collector" even covers SIWPC. Although the FDCPA includes in its definition of "debt collector" "any person . . . who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another," 15 U.S.C. § 1692a(6), the statute specifically excludes from coverage "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . is incidental to

---

[6] Plaintiffs did not attach any such response to the Amended Complaint, but given that this is a motion to dismiss, I must accept as true the factual allegation that they sent a timely written response disputing the debt. Furthermore, although the Amended Complaint alleges that SIWPC received the written response by November 10, 2012, which is 400 days after it sent the collection letter, Plaintiffs state that the date was a typo and that in fact, the response was received by November 10, 2011, the date of the foreclosure sale.

a bona fide fiduciary obligation or a bona fide escrow arrangement." *Id.* § 1692a(6)(F)(i). Defendants argue that SIWPC, in serving in its fiduciary capacity as trustee of the Deed of Trust, falls within this exemption.

This argument must fail in light of the Fourth Circuit's decision in *Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373 (4th Cir. 2006). In *Wilson*, the defendants were a law firm and one of its lawyers who acted as substitute trustees in taking actions to foreclose on a deed of trust. *Id.* at 374. The defendants sent a letter to the plaintiff borrower that identified itself as an attempt to collect a debt and stated that it was "written pursuant to the provisions of the [FDCPA]." *Id.* The defendants also sent a notice that "gave specific information concerning 'the amount of the debt,' the 'creditor to whom the debt is owed,' and the procedure for validating the debt," but that notice expressly stated that the defendants were not debt collectors or acting in connection with the collection of a debt. *Id.* at 375. The Fourth Circuit held that "trustees, including attorneys, acting in connection with foreclosure can be 'debt collectors' under the Act." *Id.* at 375. Like SIWPC, the defendants in *Wilson* argued that "as trustees foreclosing on a property pursuant to a deed of trust, they were fiduciaries benefitting from the exemption of § 1692a(6)(F)(i)." 443 F.3d at 377. The Fourth Circuit disagreed, concluding that:

> a trustee's actions to foreclose on a property pursuant to a deed of trust are not 'incidental' to its fiduciary obligation. Rather they are central to it. Thus, to the extent Defendants used the foreclosure process to collect [plaintiff's] alleged debt, they cannot benefit from the exemption contained in § 1692a(6)(F)(i).

*Id.* In *Goodrow v. Friedman & MacFadyen, P.A.*, 788 F. Supp. 2d 464, 470 (E.D. Va. 2011), a district court applied *Wilson* to find that the plaintiff had properly alleged that a substitute trustee was a debt collector under the FDCPA.

Since *Wilson*, however, some courts have found that trustees foreclosing on properties pursuant to deeds of trust did not act as "debt collectors" under the FDCPA, notwithstanding the

Fourth Circuit's holding. *See, e.g.*, *Blick v. Wells Fargo Bank, N.A.*, No. 3:11-cv-81, 2012 WL 1030137, at *8 (W.D. Va. Mar. 27, 2012); *Moore v. Commonwealth Trs., LLC*, No. 3:09CV731, 2010 WL 4279284, at *3 (E.D. Va. Oct. 25, 2010); *Blagogee v. Equity Trs., LLC*, No. 1:10-CV-13, 2010 WL 2933963, at *5–6 (E.D. Va. July 26, 2010). In general, these courts found that although the Fourth Circuit held that foreclosure trustees *could* be debt collectors under the FDCPA, that does not necessarily mean that all foreclosure trustees actually are debt collectors under the Act. *See, e.g.*, *Moore*, 2010 WL 4279284, at *3.[7] These courts each identified some factual variations that distinguished the cases from *Wilson*. In *Blagogee*, for example, although the substitute trustee sent notices with the statements "This Communication is From a Debt Collector," and "this is an attempt to collect a debt," the court held that *Wilson* was distinguishable because "the Blagogoees never received an express demand for payment, notice of the person to whom their debt should be paid, or a statement indicating that [the trustee] was attempting to collect a debt." *Blagogee*, 2010 WL 2933963, at *6. Similarly, the court in *Moore*, 2010 WL 4279284, at *4, found that because there was no express demand for payment or notice of to whom the debt should be paid in a notice sent to the plaintiff, the "letter did not constitute 'collection activity' nor was the author a 'debt collector' as defined in the FDCPA." *See also Blick*, 2012 WL 1030137, at *8 (following *Moore*).

      Having considered the facts alleged by Plaintiffs and the language of the notice sent by SIWPC, I find that this case, like *Goodrow*, is on all fours with *Wilson*. The letter SIWPC sent to Plaintiffs identified itself as a notice required by the FDCPA, and it contained the following message:

---

[7] Indeed, the Fourth Circuit said in *Wilson* that its decision was "not intended to bring every law firm engaging in foreclosure proceedings under the ambit of the Act." 443 F.3d at 379.

**THIS IS AN ATTEMPT TO COLLECT A DEBT**
**THIS IS A COMMUNICATION FROM A DEBT COLLECTOR**
**ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE**

Like the notices in *Wilson* and *Goodrow*, and unlike the notices in *Blagogee*, *Moore*, and *Blick*, SIWPC's letter further identified the amount of the debt, the creditor to whom it was owed, and provided the information required by 15 U.S.C. § 1692g(a) about the 30-day verification period during which the debtor could dispute the validity of the debt. The October 5 letter was not simply a notice that foreclosure would take place on a particular date. In fact, it contained no information about when the foreclosure would take place, and instead contained information almost entirely related to collection of the debt. For these reasons, I find that Plaintiffs have sufficiently alleged that SIWPC was acting as a debt collector attempting to collect a debt under the FDCPA.

## 2. Did SIWPC Violate the FDCPA?

Having decided that SIWPC does fall within the FDCPA's definition of a "debt collector," the question remains whether Plaintiffs have alleged facts sufficient to state a plausible claim that SIWPC actually violated that law. As discussed in more detail above, Plaintiffs allege that SIWPC violated 15 U.S.C. § 1692g(b) by proceeding with foreclosure after Plaintiffs disputed their debt in writing. Relying on a staff commentary issued by the Federal Trade Commission ("FTC") and a Seventh Circuit decision, *Bartlett v. Heibl*, 128 F.3d 497, 501 (7th Cir. 1997), Defendants argue that § 1692g(b) does not preclude a trustee from proceeding with foreclosure. The FTC commentary stated that:

> An attorney debt collector may take legal action within 30 days of sending the required validation notice, regardless of whether the consumer disputes the debt; if the consumer disputes the debt, the attorney may still take legal action but must cease other collection efforts (e.g., letters or calls to the consumer) until verification is obtained and mailed to the consumer.

53 Fed. Reg. 50097-50110 (Dec. 13, 1988).  In *Bartlett*, 128 F.3d at 501, the court stated that a "debt collector is perfectly free to sue within thirty days; he just must cease his efforts at collection during the interval between being asked for verification of the debt and mailing the verification to the debtor."  Defendants suggest that the words "cease collection of the debt" really mean something like "cease contacting the debtor for the purpose of trying to collect his debt."  Under their theory, a debt collector may still enforce legal obligations related to the debt so long as the debt collector does not continue to send collection notices or engage in similar activity.

       Plaintiffs essentially respond that "collection of the debt" must include a foreclosure sale because that is the mechanism by which the debt collector actually collects money owed to the creditor.  They contend that the very language in *Bartlett* cited by Defendants in fact supports their argument.  Moreover, they suggest that Defendants' reliance on the FTC commentary quoted above is invalid in light of the Supreme Court's decision in *Heintz v. Jenkins*, 514 U.S. 291, 298 (1995), in which the Court stated that it could not give conclusive weight to a statement in the commentary, which itself states that it is "not binding on the Commission or the public."  In *Heintz*, the Court held that the term "debt collector" as defined in the FDCPA applies to lawyers "who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation."  *Id.* at 299.  Contrary to Plaintiffs' suggestion, the Court did not completely reject the validity of the entire commentary.  Rather, it found that its interpretation of one part of the Act fell outside the range of reasonable interpretations of the Act's express language.  *See id.* at 298.  The Court said nothing about the issue presented in this case—whether a debt collector can proceed with foreclosure during the 30-day verification period; the Court

held only that lawyers can fall within the definition of "debt collector." *See id.* Thus, the FTC's commentary, while certainly not binding, may have some persuasive force.

Because district courts have frequently found that substitute trustees are not "debt collectors" under the FDCPA, they generally have not reached the question whether foreclosure after receipt of written notice disputing the debt violates the provisions of § 1692g(b). Even in other contexts, courts differ about what it means to "cease collection of a debt" and whether bringing legal action to enforce the debt violates § 1692g(b). In *Dikun v. Streich*, 369 F. Supp. 2d 781, 788 (E.D. Va. 2005), the court held that the plaintiff stated a valid claim under 15 U.S.C. § 1692g(b) when she alleged that the defendant filed a warrant in debt in a state court without providing the plaintiff with verification of the debt. In *Anderson v. Frederick J. Hanna & Associates*, 361 F. Supp. 2d 1379, 1382–83 (N.D. Ga. 2005), the defendants filed suit after having received a verification request, and the court granted summary judgment in favor of the plaintiff on her claim that defendants violated § 1692g(b). Citing *Bartlett*, the court held that once a debtor requests verification, the collector must provide it before resuming collection efforts, and "defendants' argument that a lawsuit to collect a debt is not a 'collection activity' is patently frivolous." *Anderson*, 361 F. Supp. 2d at 1383. By contrast, in *Shimek v. Weissman, Nowack, Curry & Wilco, P.C.*, 374 F.3d 1011, 1013 (11th Cir. 2004) (per curiam), the Eleventh Circuit cited *Bartlett* for the proposition that "[t]he plain language of § 1692g(b) does not extinguish a creditor's right to secure a debt under state law, but instead merely prohibits deceptive collection techniques."

Ultimately, the statutory language is clear: a creditor must "cease collection of a debt." Like the courts in *Dikun* and *Anderson*, I find that the plain meaning of that phrase must mean that a creditor cannot take action, in this case foreclosure, that would result in the collection of

the debt, until it has satisfied the prerequisites imposed by the statute. Therefore, Plaintiffs have alleged sufficient facts in the Amended Complaint to state a claim that when SIWPC foreclosed on Plaintiffs' home, it violated 15 U.S.C. § 1692g(b).

### 3. Can an FDCPA Violation Breach the Terms of the Deed of Trust?

In Count Two of the Amended Complaint, Plaintiffs allege that because the Deed of Trust incorporates "Applicable Law," a violation of the FDCPA constitutes a breach of the Deed of Trust. Although the Amended Complaint is unclear about which counts Plaintiffs assert against which defendants, it appears that Plaintiffs bring Count Two against Wells Fargo only, since Fannie Mae and SIWPC were not parties to the Deed of Trust. Plaintiffs concede they cannot bring a claim against Wells Fargo directly for violations of the FDCPA because Wells Fargo is a creditor and thus does not fall within the statutory definition of "debt collector." *See Blick*, 2012 WL 1030137, at *7 ("[C]reditors, mortgag[ees], and mortgage servicing companies are not debt collectors and are statutorily exempt from liability under the FDCPA.") (quoting *Ruggia v. Wash. Mut.*, 719 F. Supp. 2d 642, 647–48 (E.D. Va. 2010), *aff'd* 442 Fed. App'x 816 (4th Cir. 2011)). Nor can creditors be held vicariously liable for FDCPA violations by independent debt collectors acting on their behalf. *See Washington v. CitiMortgage, Inc.*, No. 3:10-CV-887, 2011 WL 1871228, at *13 (E.D. Va. May 16, 2011).

Instead, Plaintiffs seek to hold Wells Fargo liable for SIWPC's alleged FDCPA violation indirectly by means of the Deed of Trust. To do so, they claim that: (i) the Deed of Trust incorporated the FDCPA as "Applicable Law;" (ii) SIWPC acted as Wells Fargo's agent and SIWPC's alleged knowledge that Plaintiffs disputed the debt should be imputed to Wells Fargo; (iii) SIWPC's alleged violation of the FDCPA breached the terms of the Deed of Trust requiring that all actions taken under it be conducted in accordance with "Applicable Law;" and (iv) as a

result, the foreclosure was void or voidable. This logic of this argument is tenuous at best, and I find that it fails at its very first step: the Deed of Trust does not incorporate the FDCPA as "Applicable Law."

The argument that the FDCPA is incorporated into the Deed of Trust depends on three instances where the Deed of Trust mentions "Applicable Law." First, § 22 provides that, in case of a borrower's failure to cure a default, "Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law." Second, when invoking the power of sale, the lender or trustee must give "notice of sale as required by Applicable Law." *Id.* Third, § 16 provides that it "shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law." The Deed of Trust specifically defines "Applicable Law" to mean "all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as applicable final, non-appealable judicial opinions."

"A deed of trust is construed as a contract under Virginia law," s*ee, e.g.*, *Mathews*, 724 S.E.2d at 200, and "[i]t is construed as written, without adding terms that were not included by the parties." *Id.* at 201. Thus, whether the Deed of Trust incorporates the FDCPA in its terms is a matter of contract interpretation. "Most courts construe narrowly the phrase 'all applicable law' (or similar language) in a contract." *Condel v. Bank of America, N.A.*, No. 3:12CV212, 2012 WL 2673167, at *8 (E.D. Va. 2012). In *Condel*, the court stated that language incorporating "applicable law" "does not appear to incorporate laws which are not *already* applicable (even if otherwise relevant) to the parties or their agreement." *Id.* The Defendants

argue that taken in its plain ordinary meaning, the FDCPA is not a body of law that applies directly to the Deed of Trust. As a creditor, Wells Fargo is not subject to the law's provisions and the Deed of Trust contains no evidence that the parties intended to incorporate the law. Nor do the three provisions cited by Plaintiffs appear to encompass the alleged violation of the FDCPA.

Plaintiffs argue that this Court should find the FDCPA incorporated into the Deed of Trust's terms under *Mathews*. *See* 724 S.E.2d at 203. In that case, the Supreme Court of Virginia held that a deed of trust incorporated as a condition precedent to foreclosure certain regulations promulgated by the Department of Housing and Urban Development. *Id.* at 200. That case is easily distinguishable, however, because the deed of trust explicitly identified HUD regulations as imposing limits on the lender's actions. *Id.* at 201. In this case, there is no reference to the FDCPA in the Deed of Trust. Accordingly, because I find that the FDCPA is not incorporated into the terms of the Deed of Trust, a violation of the FDCPA cannot support a claim for breach of that agreement, and Count Two must be dismissed.

### D. Plaintiffs' Quiet Title Claim

In each of the Amended Complaint's three counts, Plaintiffs state that they are bringing an action to quiet title. In Virginia, "an action to quiet title is based on the premise that a person with good title to certain real or personal property should not be subjected to various future claims against that title." *Maine v. Adams*, 672 S.E.2d 862, 866 (Va. 2009). A plaintiff asserting a quiet title claim, however, must assert that he has rights superior to others asserting an interest in the property. *See Gallant v. Deutsche Bank Nat'l Trust Co.,* 766 F. Supp. 2d 714, 719 (W.D. Va. 2011); *Tapia v. U.S. Bank, N.A.*, 718 F. Supp. 2d 689, 700 (E.D. Va. 2010). In *Blick*, 2012 WL 1030137, at *4, this Court dismissed a claim to quiet title where plaintiffs failed to allege

that they had satisfied their obligations under their note.  Other federal courts in Virginia have done the same.  *See Tapia*, 718 F. Supp. 2d at 700; *Matanic*, 2012 WL 4321634, at *7.  Plaintiffs in this case acknowledge that they defaulted on their note and have therefore failed to allege that they had satisfied their obligations.

Plaintiffs protest that "*Tapia* conflicts with longstanding Virginia case law governing actions to rescind foreclosures," and cite a Fairfax County Circuit Court decision finding "admission that the property remains encumbered by the Deed of Trust does not preclude [a] quiet title claim."  *Salazar v. U.S. Bank N.A.*, 82 Va. Cir. 344, 349 (2011).  Plaintiffs' counsel made this same argument in a nearly identical context in *Matanic*, and the court rejected it, finding *Salazar* both not binding on the court and easily distinguishable.  *See Matanic*, 2012 WL 4321634, at *7 n.3.  Thus, to the extent that Plaintiffs attempt to bring a quiet title claim independent of their other claims, such quiet title claim must be dismissed.

## IV. CONCLUSION

For the foregoing reasons, I will grant Defendants' motion to dismiss Counts One and Two in their entirety.  As for Count Three, Defendants' motion is granted with respect to Fannie Mae and Wells Fargo, and denied with respect to SIWPC.  To the extent that Plaintiffs seek to bring a quiet title claim, such claim is also dismissed.  In sum, the only claim remaining is Plaintiffs' claim against SIWPC for breach of the FDCPA; all other claims are dismissed.  An appropriate order accompanies this memorandum opinion.

The Clerk of the Court is hereby directed to send a certified copy of this memorandum opinion and the accompanying order to all counsel of record.

Entered this ___12th___ day of February, 2013.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE