UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

VELMA TOWNSEND
LANDON TOWNSEND,

    Plaintiffs,

v.                                                           Case No. 3:12-cv-0045

FEDERAL NATIONAL MORTGAGE
ASSOCIATION, *et als.*,

    Defendants.

DEFENDANT SAMUEL I. WHITE, P.C.'S MEMORANDUM IN OPPOSITION
TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

NOW COMES Defendant, Samuel I. White, P.C. ("SIWPC"), for its Memorandum in Opposition to the Motion for Partial Summary Judgment ("Motion") filed by the Plaintiffs, and states as follows:

I.    SUMMARY AND INTRODUCTION

Contrary to the Plaintiffs' contention that the facts relied upon in support of their summary judgment motion are undisputed; many of the "facts" relied on by the Plaintiffs are materially in dispute. In addition, few of the Plaintiffs' citations are to the actual record, and do not support what the Plaintiffs contend they do. Still other citations omit large portions of the record that when considered, demonstrate clearly that there are facts in dispute. Notably, the Plaintiffs ignore the single most important fact in the record. The 2009 Fair Debt Letter, defined herein below, clearly demonstrates the Plaintiffs are not entitled to summary judgment. Indeed,

in light of the undisputed facts presented by SIWPC, there is sufficient evidence for the Court to grant summary judgment to SIWPC pursuant to Rule 56(f).

## II.     STATEMENT OF DISPUTED FACTS

Pursuant to Local Rule 56(b), Wells Fargo hereby lists the material facts as to which there is a dispute, and as to which it is contended there are genuine issues to be litigated:

### SIWPC DISPUTES:

A.     <u>That the Plaintiffs first "received" the October 5, 2011 Letter ("Reminder Letter") on October 10, 2011</u>. (Pl. Memo., p. 4, ¶ 4.) SIWPC disputes this material fact for a number of reasons. First, Monday, October 10, 2011 was Columbus Day, a federal holiday for which no U.S. mail is delivered. Nor was the Letter delivered on Sunday, October 9, 2011. The October 5, 2011 Letter, therefore, had to have been dropped in the Plaintiffs' mail receptacle on either Thursday, October 6, Friday, October 7, or Saturday, October 8, 2011.

Secondly, the Plaintiffs claim that they did not check their mail any time between October 6 through 9, 2011, and therefore did not "receive" the October 5, 2011 Reminder Letter until October 10, 2011. (Dec. Velma Townsend, ¶ 9.) The Plaintiffs cannot manufacture an FDCPA claim by failing to check their own mail.

B.     <u>That the Plaintiffs respond with a debt dispute to SIWPC within 30 days of their receipt of the October 5, 2011 Letter</u>. (Pl. Memo. p. 4, ¶¶ 2, 3,5.) SIWPC disputes this material fact because the initial communication and operative document was the August 5, 2009 Fair Debt Letter. (See SIWPC's Reponses to Plaintiffs' Interrogatories, ¶ 1 and 4, attached as Ex. C). In addition, even if the October 2011 Letter was the operative FDCPA Letter, which it is not, the Plaintiffs missed the 30 day deadline to dispute it. They received the letter no later than October 8, 2011, setting the 30-day deadline at November 7, 2011. The Plaintiffs' dispute letter was

received by SIWPC on November 9, 2011, two days too late. In addition, the Plaintiff ignores SIWPC responses to Plaintiffs' Request for Admission (see attached **Exhibit 1**, ¶ 2), in which SIWPC expressly denies that a response was sent within 30 days.

### III. UNDISPUTED FACTS NOT INCLUDED IN THE PLAINTIFFS' MOTION

1. On July 31, 2009, SIWPC originally received a referral from Wells Fargo for foreclosure of the Plaintiffs' property located at 4514 West River Road, Scottsville, Virginia (the "Property"). See Declaration of Ronald J. Guillot, Jr. ("Guillot Dec.") ¶ 3, attached hereto as **Exhibit 2.**

2. SIWPC's first act prior to initiating the foreclosure process is to send notice to the borrowers, pursuant to 15 U.S.C. 1692, *et seq.,* that a lender has instructed SIWPC to initiate foreclosure proceedings and that the borrower may request validation of the debt. ("Fair Debt Letter"). Pursuant to a lender advising that the borrowers are in breach of the terms of their deed of trust, SIWPC reviews the land records and payment history, including the date of default and the appropriate addresses for notice purposes. The notices are prepared based upon the records provided by the lender and those contained in the land records. See Guillot Dec. ¶ 4.

3. On Wednesday, August 5, 2009, SIWPC mailed a Fair Debt Letter by first class, U.S. Mail to the Plaintiffs (the "2009 Fair Debt Letter" attached hereto as **Exhibit A**); see also Guillot Dec. ¶ 5; SIWPC's Responses to Plaintiffs' Interrogatories and Request for Production of Documents, attached as **Exhibit C**.

4. The 2009 Fair Debt Letter was mailed to the Property address (4514 West River Road, Scottsville, Virginia) as well as a post office box address (P.O. Box 875, Scottsville, Virginia.) See Guillot Dec. ¶ 6.

5. The 2009 Fair Debt Letter provided, among other things, that the Plaintiffs had 30

3

days within receipt to notify SIWPC in writing that they disputed the debt or any portion thereof. See Guillot Dec. ¶ 7.

6. As was SIWPC's customary practice, the 2009 Fair Debt Letter was reviewed for accuracy and placed in the United States Postal mail box for pickup and delivery to the addresses by the U.S. Postal Service. See Guillot Dec. ¶ 8.

7. The 2009 Fair Debt Letter was not returned to SIWPC as "undeliverable" or "returned to sender" for any reason, nor did SIWPC receive any such notice that the 2009 Letter was not delivered to either address. See Guillot Dec. ¶ 9.

8. The Plaintiffs never responded to the 2009 Fair Debt Letter, and certainly did not dispute the debt in writing within 30 days of its receipt. See Guillot Dec. ¶ 10.

9. A foreclosure sale was tentatively set for September 8, 2009, contingent upon receipt of an executed substitution of trustee document from Wells Fargo. Prior to SIWPC's receipt of the substitution of trustee document, and at Wells Fargo's request, the September 8, 2009 sale date was cancelled because Wells Fargo wanted to explore loss mitigation options with the Plaintiffs. See Guillot Dec. ¶ 11.

10. Subsequently, on May 17, 2010, the Plaintiffs filed a petition in the U.S. Bankruptcy Court for the Western District of Virginia for protection under chapter 13 of the Bankruptcy Code, which was assigned Case. No 10-61458.

11. The Plaintiffs filed a chapter 13 plan on June 1, 2010, in which they acknowledged that Wells Fargo was a creditor and that the loan from Wells Fargo was secured by their Property. They concede in the plan that they were in arrears on the loan. See attached **Exhibit D** for a copy of the Plaintiffs' chapter 13 plan.

12. Wells Fargo, by counsel, moved the Bankruptcy Court for relief from the

4

automatic stay on August 4, 2010, seeking permission to foreclose on the Property. A copy of the motion for relief is attached as **Exhibit E**.

13. In their "Answer" to Wells Fargo's motion for relief, the Plaintiffs admit that Wells Fargo is the holder and servicer of their Note and Deed of Trust. See attached **Exhibit F.**

14. On September 15, 2010, the Bankruptcy Court entered an "Order Granting Modification of Stay," a copy of which is attached as **Exhibit G.** In that Order, the Court specifically finds that the Plaintiffs "have agreed to cure the delinquency and maintain the account in current status, and that [Wells Fargo] shall be entitled to automatic relief from the stay … in the event of a future default." It further provides that upon written notice that if a fourth default occurred, the Court would grant Wells Fargo relief to foreclose.

15. The Plaintiffs defaulted four separate times under the modified terms of the automatic stay, and on June 7, 2011, counsel for Wells Fargo filed a notice of default as directed by the Bankruptcy Court. See attached **Exhibit H**.

16. The Bankruptcy Court entered an Order on July 1, 2011 (attached as **Exhibit I**), terminating the automatic stay for the Plaintiffs' failure to cure the default.

17. In September 23, 2011, SIWPC received a subsequent referral from Wells Fargo to resume foreclosure proceedings of the Property. See Guillot Dec. ¶ 12.

18. SIWPC sent a reminder Fair Debt letter to the Plaintiffs on Wednesday, October 5, 2011 (the "2011 Reminder Letter," attached hereto as **Exhibit B**). See Guillot Dec. ¶ 13.

19. Like the 2009 Fair Debt Letter, SIWPC mailed the 2011 Reminder Letter to the Plaintiffs at both the physical address for the Property (4514 West River Road, Scottsville, Virginia) and the P.O. Box address (P.O. Box 875, Scottsville, Virginia). See Guillot Dec. ¶ 14.

## IV. ARGUMENT

### A. Summary Judgment Standard

The Plaintiffs are not entitled to summary judgment in this case. Partial summary judgment is proper only if, viewed in the light most favorable to the non-moving party, the pleadings . . . answers to interrogatories, admissions, and affidavits show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see also Clark v. Alexander, 85 F.3d 146, 150 (4th Cir. 1996). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The essence of the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52. "[T]he Court cannot weigh the evidence or make credibility determinations in its summary judgment analysis." Aviles v. Equifax Info. Servs., 521 F. Supp. 2d 519, 522 (E.D. Va. 2007) (citing Williams v. Staples, Inc., 372 F.3d 662, 667 (4th Cir. 2004)). Therefore, if a reasonable dispute exists "as to any material fact, then summary judgment is improper." Mayberry v. Ememessay, Inc., 201 F. Supp. 2d 687, 692 (W.D. Va. 2002).

### B. The Court should deny the Plaintiffs' Motion because SIWPC complied with the FDCPA with its 2009 Fair Debt Letter to the Plaintiffs.

The Court should deny the Plaintiffs' Partial Motion for Summary Judgment because SIWPC complied with the applicable provisions of the Fair Debt Collection Practices Act ("FDCPA"). To show a violation of the FDCPA, the plaintiff "must show (1) that the plaintiff is a "consumer" within the meaning of the statute; (2) that the defendant collecting the debt is a "debt collector" within the meaning of the statute; and (3) that the defendant has violated the FDCPA by act or omission." Talbott v. GC Servs. Ltd. P'ship, 53 F. Supp. 2d 846, 850 (W.D.

Va. 1999). To analyze the existence of a FDCPA violation, the Fourth Circuit has adopted a "least sophisticated consumer" standard. Id. (quoting U.S. v. National Finan. Servs., Inc., 98 F.3d 131, 135–36 (4th Cir.1996)). "The basic purpose of the least-sophisticated-consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." Id.

### 1. SIWPC satisfied the requirements of 15 U.S.C. § 1692g with the 2009 Fair Debt Letter.

The Court should deny the Plaintiffs' Motion because the "undisputed facts" as claimed by the Plaintiffs are, in fact, disputed. The Plaintiffs claim that SIWPC violated the FDCPA in two ways. First, they claim that SIWPC violated the FDCPA by receiving a "debt dispute letter within 30 days of the [their] receipt of the [FDCPA] Notice. (Pl. Memo. P. 4, ¶ 2). The second violation comes when SIWPC proceeds with the foreclosure before responding to the Plaintiffs' debt dispute." Id.

15 U.S.C. § 1692g(a) provides as follows:

(a) Notice of debt; contents:

> Within five days after **the initial communication** with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, **within thirty days after receipt of the notice**, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against

7

the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor. 15 U.S.C. § 1692g(a)(emphasis added); see also Vitullo v. Mancini, 684 F. Supp. 2d 747, 755 (E.D. Va. 2010).

The FDCPA requires debt collectors to provide debtors with a written validation notice, informing debtors of their rights under 15 U.S.C. § 1692g, including the right to dispute the validity of the debt within thirty days of receiving the notice. See Vitullo, 684 F. Supp. 2d at 755. A debt collector must include a validation notice in its initial communication to the debtor or must send a validation notice within five days of its initial communication (unless the debtor has paid the debt by that juncture). See 15 U.S.C. § 1692g(a). After this thirty-day validation period expires, the debt collector may assume that the debt is valid. See id; 15 U.S.C. § 1692g(a)(3). "This validation period, however, is not a grace period: a debt collector is 'perfectly free' to demand payment and pursue collection efforts, including an appropriate lawsuit against the debtor, within the validation period. Thus, during the validation period, the debtor's right to dispute coexists with the debt collector's right to collect." Durkin v. Equifax Check Servs., Inc., 406 F.3d 410, 415-16 (7th Cir. 2005).

SIWPC complied with the requirements of section 1692g(a), which it included in its August 5, 2009 initial communication. A comparison of the statute with the contents of the 2009 Fair Debt Letter make this abundantly clear:

| **Requirements of 15 U.S.C. § 1692g(a)** | **209 Fair Debt Letter to Plaintiffs dated August 5, 2009** |
|---|---|
| Within 5 days of initial communication or contained in the initial communication. | First contact with Plaintiffs included notice of right to dispute |

8

| | |
|---|---|
| The amount of the debt. | "As of August 5, 2009, the lender has advised us that the amount of the debt is $215,616.13." |
| The name of the creditor to whom the debt is owed. | "The creditor to whom the debt is owed is Wells Fargo Bank, N.A." |
| A statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector. | "The Fair Debt Collection Practices Act entitled you to dispute the debt, or any portion thereof, within thirty (30) days of your receipt of this letter." |
| A statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector.<br><br>A statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor | "If you notify us within thirty (30) days of the date you receive this letter that you are disputing this debt or any portion thereof, or if you notify us within thirty (30) days of the date you receive this letter that you want to know the name of the original creditor if that creditor is different from Wells Fargo Bank, N.A., then we will obtain and mail to you the verification of the debt and/or the name and address of the original creditor." |
| "Safe harbor language" | "The Fair Debt Collection Practices Act does not require that we wait until thirty (30) days from the date that you received the letter before initiating proceedings to foreclose your mortgage. In the event that we do initiate foreclosure proceedings during the thirty (30) days after the date you receive this letter, you still retain the right to dispute the debt, or any portion thereof, and you also retain the right to |

| | request the name of the original creditor is different from Wells Fargo. |
|---|---|

**2. SIWPC is not required to establish that the Plaintiffs received the 2009 Fair Debt Letter.**

The court should deny the Plaintiffs' Motion because there is no evidence that the Plaintiffs did not receive the 2009 Fair Debt Letter. Further, SIWPC is not required to prove that the Fair Debt Letter was actually delivered to the Plaintiffs. "The common law Mailbox Rule provides that 'proper and timely mailing of a document raises a rebuttable presumption that it is received by the addressee.'" Holsinger v. Wolpoff & Abramson, LLP, Case No. 05-02075, 2006 WL 2092632 (N.D. Cal. July 27, 2006) (quoting Mahon v. Credit Bureau of Placer County Inc., 171 F.3d 1197, 1202 (9th Cir.1999). "[S]ection 1692g(a) requires only that a notice be 'sent' by a debt collector" and that "[a] debt collector need not establish actual receipt by the debtor. Id. (emphasis added); see also, "Verification of Debt-Debt Collector Actions," Fed. Banking L. Rep. P 64-706A.061 (C.C.H.), 2009 WL 3693607 ("A debt collector's routine business practices and the common law 'Mailbox Rule' are sufficient to establish that the FDCPA debt verification requirements had been satisfied. The presumption that the notice of a right to verification was mailed is not rebutted by the consumers' claim that they had not received the notice.")

On Wednesday, August 5, 2009, SIWPC mailed the 2009 Fair Debt Letter by first class, U.S. Mail to the Plaintiffs[1]. See **Exhibit A** and Guillot Dec. ¶ 5. The 2009 Fair Debt Letter was

---

[1] SIWPC provided copies of the 2009 Fair Debt Letter to the Plaintiffs in its Responses to Interrogatories and Request for Production of Documents (attached as Exhibit C.) Although Plaintiffs failed to acknowledge the 2009 Letter in their Motion for Summary Judgment, to the extent they will argue it violates the FDCPA (which it does not), such argument comes too late. "A suit alleging a violation of the FDCPA must be brought within one year of the violation's occurrence." See 15 U.S.C. § 1692k(d); Vitullo v. Mancini, 684 F. Supp. 2d 747, 753 (E.D. Va. 2010). A violation occurs, and thus the action occurs, when the debt collector sends the notice. Vitullo, 684 F. Supp. 2d at 753.

mailed to the Plaintiffs' Property address (4514 West River Road, Scottsville, Virginia) as well as a post office box address (P.O. Box 875, Scottsville, Virginia.) Guillot Dec. at ¶ 6. The 2009 Fair Debt Letter provided, among other things, that the Plaintiffs had 30 days after receipt of the Letter to notify SIWPC in writing that they disputed the debt or any portion thereof. Id. at ¶ 7.

As was SIWPC's customary practice, the 2009 Fair Debt Letter was reviewed for accuracy, and placed in the United States Postal mail box for pickup and delivery to the addresses by the U.S. Postal Service. Id. at ¶ 8. The Plaintiffs' 2009 Fair Debt Letter was not returned to SIWPC as "undeliverable," or "returned to sender" for any reason, nor did SIWPC receive any such notice that the 2009 Fair Debt Letter was not delivered to either address. Id. at ¶ 9. The Plaintiffs never responded to the 2009 Fair Debt Letter, and certainly did not dispute the debt in writing within 30 days of its receipt. Id. at ¶ 10.

A foreclosure sale for the Plaintiffs' Property was tentatively set for September 8, 2009, contingent upon receipt of an executed substitution of trustee document from Wells Fargo. Prior to SIWPC's receipt of the substitution of trustee document, and at Wells Fargo's request, the September 8, 2009 sale date was cancelled. Id. at ¶ 11.

**3. SIWPC had no obligation to send subsequent notices to the Plaintiffs after sending the 2009 Fair Debt Letter.**

Once a debt collector has satisfied the requirements of 1692g(a), the FDCPA does not mandate that further validation notices be sent. Durkin, 406 F.3d at 417. "By its express language[,] § 1692g(a) applies to the 'initial communication' from the debt collector." Dikun v. Streich, 369 F. Supp. 2d 781, 788 (E.D. Va. 2005). There is "no case authority that would require a debt collector to comply with section 1692g(a)(1) when it sends any subsequent letter that include validation rights." Holsinger, Case No. 05-02075, 2006 WL 2092632, *10. Indeed, by

disclosing some of Plaintiffs' rights in [a subsequent] notice, [a debt collector] defendant went beyond the disclosure requirements of the FDCPA. The court will not penalize a debt collector who discloses more than is required by the Act. One of the purposes of the disclosure requirement of section 1692g(a) is to ensure that consumers are made aware of their rights with respect to debt collection activities. Restatement by a debt collector in correspondence subsequent to the initial communication of some of the consumer's section 1692g(a) rights furthers this goal. The FDCPA was intended to prevent abusive debt collection practices. It was *not* intended to penalize honest debt collectors. The … reiteration [of a debtor's] rights under sections 1692g(a)(4) & (5) in the [subsequent] notice did not violate the Act. Higgins v. Capitol Credit Servs., Inc., 762 F. Supp. 1128, 1134-35 (D. Del. 1991).

The Plaintiffs failed to dispute the 2009 Fair Debt Letter, and SIWPC had no obligation to provide additional FDCPA notices to them. Indeed, the 2011 Reminder Letter simply reiterated the debt being pursued.

C. **Assuming *arguendo* that the 2011 Reminder Letter was the operative Fair Debt Letter, which it is not, the Court should further deny the Plaintiffs' Motion because they failed to comply with 15 U.S.C. § 1692 in responding to the 2011 Reminder Letter.**

The Court should further deny the Plaintiffs' Motion for Summary Judgment because the 2011 Reminder Letter and SIWPC's related actions did not violate the FDCPA. Even assuming for the sake of argument that the 2011 Reminder Letter is the relevant letter, the Plaintiffs still cannot make a claim for a violation of section 1692g of the FDCPA. In support of their Motion, the Plaintiffs allege that they each "first received" the 2011 Reminder Letter on October 10, 2011. (Pl. Memo. p. 2, Dec. of Velma Townsend, Dec. of Landon Townsend.) This is untrue and, at the very least creates a genuine issue of material fact for three distinct reasons. First, mail is "delivered" when it is placed in mail receptacle, not when the Plaintiff decide to check their mail. Second, October 10, 2011 was Columbus Day, and no mail was delivered. Lastly, no mail was delivered on Sunday, October 9, 2011, either, so the latest the Plaintiffs could have received the 2011 Reminder Letter was Saturday, October 8, 2011.

### a. The 2011 Letter was "delivered" when it was placed in the Plaintiffs' mail receptacle, whether it be at their post office box or in a mailbox at the address.

The Court should deny the Plaintiffs' Motion because they did not "receive" the 2011 Reminder Letter on October 10, 2011. As discussed above, the "Mailbox Rule provides that 'proper and timely mailing' of a document raises a rebuttable presumption that it is received by the addressee." Holsinger, Case No. 05-02075, 2006 WL 2092632, *10 (internal quotations omitted). Further, Black's Law Dictionary defines the verb "mail" as "[t]o deposit (a letter, package, etc.) with the U.S. Postal Service; to ensure that a letter package, etc. is properly addressed, stamped, and placed into a receptacle for mail pickup." Black's Law Dictionary 1038 (9th Ed.2009). The Domestic Mail Manual ("DMM"), 39 C.F.R. §111.1, states that "[s]ingle piece First-Class Mail letters may be deposited into any collection box, mail receptacle, or at any place where mail is accepted if the full required postage is paid with adhesive stamps." A letter is therefore "mailed" the minute it was placed in a mail receptacle. Matanic v. Wells Fargo Bank, N.A., Case No. 3:12cv472, 2012 WL 4321634 (E.D. Va. Sept. 19, 2012).

The same must be true for the definition of "delivered."[2] The New Oxford American Dictionary defines "delivered" as "to bring and hand over (a letter, parcel, or ordered goods) to the proper recipient or address." If something is "mailed" the moment it is placed by the sender in a mail receptacle for delivery (see Matanic, 2012 WL 4321634), it is therefore "delivered" when the same piece of mail is placed in the recipient's mail receptacle.

---

[2] Although not conclusive, it is important to note that for domestic mail traveling from Virginia Beach to Scottsville, the DMM's service standard is 1-day (overnight). 39 CFR 121.1; 39 USC 101, *et seq.* seq. In all likelihood, the 2011 Reminder Letter was delivered to the Plaintiff on Thursday, October 6, 2011.

While 15 U.S.C. § 1692g(2) does not define "receipt," and there are no reported FDCPA cases on the definition, there is an illustrative body of EEOC case law regarding a claimant's right to sue an employer that addresses the definition of "receipt" in a statute. An aggrieved employee must first file a claim with the EEOC before filing suit against an employer. The EEOC will mail a "right to sue" letter to a claimant, who has 90 days from receipt of the letter to commence an action against the employer.

If a plaintiff does not file suit within the ninety day period, she will forfeit her right to pursue the claim. Darden v. Cardinal Travel Ctr., 493 F.Supp.2d 773, 775 (W.D.Va.2007) (citing Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 149-50, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984)). This timing requirement is strictly construed. See Lewis v. Norfolk S. Corp., 271 F.Supp.2d 807, 811 (E.D.Va.2003); Harvey v. City of New Bern Police Dep't, 813 F.2d 652 (4th Cir.1987) (finding a suit filed ninety-one days after the claimant's wife received the notice was untimely).

The Eleventh Circuit in Law v. Hercules, Inc. declined to establish an "actual receipt rule" which would have begun the clock at the time the plaintiff claims to have become aware of the letter, stating that to hold otherwise would be to "foster a manipulable open-ended time extension which would render the statutory limitation meaningless" Henderson v. NCO Fin. Sys., CA 09-0769-CG-C, 2010 WL 1382737 (S.D. Ala. Mar. 12, 2010) report and recommendation adopted, CA 09-0769-CG-C, 2010 WL 1382668 (S.D. Ala. Mar. 31, 2010)(quoting Law v. Hercules, Inc., 713 F.2d 691, 692 (11th Cir. 1983)); see also Sanderlin v. La Petite Acad., Inc., 637 F. Supp. 1166, 1170-71 (E.D. Va. 1986). The Fourth Circuit has explicitly rejected the "actual receipt" rule. Asbury v. City of Roanoke, 599 F. Supp. 2d 712, 716 (W.D. Va. 2009) aff'd, 330 F. App'x 39 (4th Cir. 2009)(citing Harvey, supra, 813 F.2d at 653-54 (4th Cir.1987)) .

14

The Court should deny the Plaintiffs' Motion for Summary Judgment because the issue of whether they received the 2011 Reminder Letter on October 10, 2011 is a material fact in dispute. It is clear that the Plaintiffs did not "receive" the 2011 Reminder Letter on October 10, 2011 simply because they left it in the mailbox for several days before opening. They cannot manufacture a FDCPA claim simply by neglecting to collect their mail. The 2011 Reminder Letter, therefore, was delivered to the Plaintiffs, and they received it, at the moment it was placed in either of the mail boxes.

> **b.  The Plaintiffs did not "receive" the 2011 Reminder Letter on October 10, 2011 because it was Columbus Day and no mail was delivered.**

The Plaintiffs Motion should be denied because there is no possible way they "received" the 2011 Reminder Letter on October 10, 2011. Pursuant to 5 U.S.C. § 6301, "the following are legal public holidays: … Columbus Day, the second Monday in October." Pursuant to Federal Rule of Evidence 201, the Court may take judicial notice that October 10, 2011 was the second Monday in October of 2011. First, this fact is generally known within this and every jurisdiction. In addition, and second, this fact can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned, namely through reference to a calendar. (See attached **Exhibit J** for 2011 calendar.)

In addition, the U.S. Office of Personnel Management ("OPM") makes the annual determination which dates in each year are federal holidays for which employees are given leave. OPM publishes the holiday calendar for each year on their official website. See http://www.opm.gov/policy-data-oversight-snow-dismissal-procedures/federal-holidays/. On the OPM official calendar, October 10, 2011 was Columbus Day and was a federal holiday, id., and in fact, the U.S. Postal Service is closed on Columbus Day,. See

15

http://aboutusps.com/news/service-alerts/2011-federal-holidays.htm. Simply stated, there was no mail delivery in the United States on October 10, 2011.

        **c.      The latest the Plaintiffs could have "received" the 2011 Reminder Letter was Saturday, October 8, 2011, making their debt dispute letter of November 9, 2001 untimely for purposes of establishing an FDCPA violation.**

As stated above, the Plaintiffs did not "receive" the 2011 Reminder Letter on October 10, 2011. Nor could they have received it on Sunday, October 9, 2011, as there is also no mail delivery in the United States on Sundays[3]. The latest date the 2011 Reminder Letter was placed in the Plaintiffs' mail receptacle and that they possibly could have received it was October 8, 2011.[4] This is true especially in light of their admission that neither checked the mail on October 6, 7, 8, or 9, 2011. Decl. of Velma Townsend, ¶ 9, Decl. of Landon Townsend, ¶ 6.

    **D.    The Court should deny the Plaintiffs' Motion because they have also failed to establish a violation of 15 U.S.C. § 1692g(b).**

The Plaintiffs allege that SIWPC violated the FDCPA by not halting the foreclosure sale after receiving the Plaintiffs' (untimely) November 9, 2011 dispute letter. Section 1692g(b) provides:

> (b) Disputed debts:
>
> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to

---

[3] Pursuant to Federal Rule of Evidence 201, the Court can take judicial notice of such a commonly known and consistent fact.

[4] When the date of receipt is unknown, courts must apply the rule that receipt occurs three days after the document was sent. See Fed.R.Civ.P. 6(d); see also Abraham v. Greater Birmingham Humane Soc., Inc., 2:11-CV-4358-SLB, 2013 WL 1346534 (N.D. Ala. Mar. 28, 2013).

the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication <u>during the 30-day period</u> may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor. 15 U.S.C. § 1692g(b) (emphasis added).

The Plaintiffs attempt to create the alleged violation of 15 U.S.C. § 1692g(b) by claiming SIWPC should have halted the foreclosure sale upon receipt of their November 9, 2011 dispute letter. As discussed above, 15 U.S.C. § 1692g(a) requires the Plaintiffs, in order to dispute the debt, to send notice to SIWPC **within thirty days after receipt of the notice**. Thirty days from October 8, 2011 was November 7, 2011. The Plaintiffs' debt dispute letter received by SIWPC on November 9, 2011 (Pl. Memo. p. 2) comes too late. The dispute was not made within the thirty-day period. See ¶¶ 2, 3 and 5 of SIWPC's Responses to Pl. Requests for Admission (Ex. 1). At a minimum, this is a genuine issue of material fact and is inappropriate for ruling on Summary Judgment.

V.   CONCLUSION

For the reasons stated, Plaintiffs' Motion for Partial Summary Judgment should be denied.

**SAMUEL I. WHITE, P.C.**

By: _____/s/ Terry C. Frank_____
Terry C. Frank(VSB No. 74890)
Email:  tcfrank@kaufcan.com
KAUFMAN & CANOLES, P.C.
Two James Center
1021 E. Cary St., 14th Floor
Richmond, VA 23219
(804) 771-5700
(804) 771-5777 Facsimile

Hunter W. Sims, Jr. (VSB No. 09218)
Email: hwsims@kaufcan.com
KAUFMAN & CANOLES, P.C.
150 West Main Street, Suite 2100
Norfolk, VA 23510
(757) 624-3000
(757) 624-3169 Facsimile
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Henry W. McLaughlin, Esq.
Law Office of Henry McLaughlin, P.C.
Eight and Main Building
707 E. Main Street, Suite 1050
Richmond, VA 23219
henry@mclaughlinvalaw.com

By: */s/ Terry C. Frank*
Terry C. Frank (VSB No. 74890)
Email: tcfrank@kaufcan.com
KAUFMAN & CANOLES, P.C.
Two James Center
1021 E. Cary St., 14th Floor
Richmond, VA 23219
(804) 771-5700
(804) 771-5777 Facsimile
*Counsel for Defendants*

12666662