IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| VELMA TOWNSEND, *et al.* )<br>      *Plaintiffs,* )<br>)<br>v. )<br>)<br>FEDERAL NATIONAL MORTGAGE )<br>ASSOCIATION, *et al.,* )<br>      *Defendants.* ) | CASE NO. 3:12-CV-0045<br><br>**MEMORANDUM OPINION** |

      This matter is before the court upon the motion to certify judgment as final as to Defendants Wells Fargo Bank, N.A., and Federal National Mortgage Association ("Fannie Mae") filed by Defendants, and the motion for summary judgment as to liability against Samuel I. White, P.C. ("SIWPC") filed by Plaintiffs Velma and Landon Townsend ("Plaintiffs"). For the following reasons, I will deny Plaintiff's motion for summary judgment. Furthermore, I will exercise my discretion under Rule 56(f) of the Federal Rules of Civil Procedure to grant summary judgment for Defendant SIWPC. As granting summary judgment for Defendant SIWPC eliminates Plaintiff's final claim in this case, I will deny as moot Defendants' motion to certify judgment as final as to Wells Fargo and Fannie Mae.

### I. BACKGROUND

      The plaintiffs, Velma and Landon Townsend, owned a home in Scottsville, VA. In 2007, they entered into a mortgage loan in which they were the borrowers and American Home Mortgage was the lender. The loan was evidenced by a note signed by the plaintiffs and secured by a deed of trust signed by the plaintiffs and recorded in the clerk's office of the Fluvanna County Circuit Court. American Home assigned the Note to Wells Fargo.

On July 21, 2009, SIWPC received a referral from Wells Fargo for foreclosure of the Plaintiffs' property. SIWPC acted by mailing a Fair Debt Letter on August 5, 2009. SIWPC received no response and a foreclosure sale was tentatively set for September 8, 2009. That foreclosure was cancelled because Wells Fargo sought to explore loss mitigation options with the plaintiffs. Eventaully, plans to foreclose resumed, and Wells Fargo sent "acceleration notices" on July 17 and August 22 of 2011. On September 23, 2011, SIWPC received a subsequent referral to resume foreclosure proceedings.

On October 5, 2011, SIWPC sent Plaintiffs a Fair Debt Letter informing them that SIWPC had been instructed to initiate foreclosure proceedings and providing information about the debt (including the identity of the creditor, the amount owed, and the procedure by which the plaintiffs could dispute the debt). On November 10, 2011, a foreclosure auction was held at which Wells Fargo entered the highest bid. Wells Fargo transferred title of the property to Fannie Mae. Plaintiffs filed suit seeking damages and to quiet title.

On February 12, 2013, I granted Defendant's motion to dismiss Counts One and Two in their entirety, and granted Defendant's motion to dismiss Count Three as to Fannie Mae and Wells Fargo, leaving only Count Three against SIWPC. On August 30, 2013, the Defendants filed for entry of judgment pursuant to Federal Rule of Civil Procedure 54(b) as to Defendants Wells Fargo and Fannie Mae, and Plaintiffs filed for summary judgment as to their remaining claim against SIWPC.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that a court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and

that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment under Rule 56 is appropriate only when the court, viewing the record as a whole and drawing reasonable inferences in the light most favorable to the nonmoving party, determines that the Rule 56(c) standard has been met. *See, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–50 (1986); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994); *Terry's Floor Fashions, Inc. v. Burlington Indus., Inc,* 763 F.2d 604, 610 (4th Cir. 1985).

If the nonmoving party bears the burden of proof, "the burden on the moving party may be discharged by 'showing' … an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325. If the moving party shows such an absence of evidence, the burden shifts to the nonmoving party to set forth specific facts illustrating genuine issues for trial. *See* Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324.

A court must grant a motion for summary judgment if, after adequate time for discovery, the nonmoving party fails to make a showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322. The nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but … [must] by affidavits or as otherwise provided in … [Rule 56] set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Indeed, the nonmoving party cannot defeat a properly supported motion for summary judgment with mere conjecture and speculation. *Glover v. Oppleman*, 178 F. Supp. 2d 622, 631 (W.D. Va. 2001) ("Mere speculation by the non-movant cannot create a genuine issue of material fact."). If the proffered evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th

Cir. 1987) (citing *Anderson*, 477 U.S. at 242). The trial judge has an "affirmative obligation" to "prevent 'factually unsupported claims and defenses' from proceeding to trial." *Id.* (quoting *Celotex*, 477 U.S. at 317).

Under Federal Rule of Civil Procedure 56(f)(1), "the Court may grant summary judgment for the non-moving party [a]fter giving notice and a reasonable time to respond." Although this may often mean formal notification, "based on the particular case, such a formality may not be required." *Johnson v. State Farm*, 2013 U.S. Dist. LEXIS 102440, at *5 (S.D. Ala. 2013). When there is "sufficient notice of a possible judgment against [a party] on statute of limitations grounds and [the party] has had a full and fair opportunity to respond," the court may enter summary judgment for a nonmoving party. *California v. Kinder Morgan Energy Partners, L.P.*, 2013 U.S. Dist. LEXIS 10503, at *22 (S.D. Cal. 2013).

### III. DISCUSSION

Plaintiffs argue that they received the Fair Debt Collection Practices act ("FDCPA") letter on October 10, 2011. They contend that their debt dispute was sent to SIWPC on November 9, 2011, within 30 days of receipt of the letter on October 10th. I earlier decided that the notice in this case was sufficiently similar to the notice in *Wilson v. Draper & Goldberg*, 443 F.3d 373 (4th Cir. 2006), meaning that SIWPC was acting as a debt collector attempting to collect a debt under the FDCPA. Further, I held that the language of 15 U.S.C. § 1692g(b) requiring that a debt collector "cease collection of the debt" in the face of a timely filed debt dispute forbade a collector not just from contacting the debtor with additional collection notices but also from instituting a foreclosure sale. Thus, if Plaintiff's version of the timeline were accurate, they would be correct that SIWPC violated the FDCPA by proceeding with the foreclosure sale on November 10, 2011.

Two facts, however, prove fatal to Plaintiff's claim. The first is that SIWPC mailed to Plaintiffs the first Fair Debt Letter on August 5, 2009.[1] § 1692g(a) suggests that only in an "initial communication" does the debt collector have to provide certain information, including that the consumer may dispute the validity of the debt "within thirty days after receipt of the notice." If the consumer does not do so, of course, the debt collector may assume the debt is valid. *See* 15 U.S.C. § 1692g(a)(3).

Defendant argues that the 2009 letter is the "initial communication," and that by failing to respond to *that* letter, the Plaintiffs waived their right to dispute the debt. Defendant cites *Dikun v. Streich*, 369 F. Supp. 23 781, 788 (E.D. Va. 2005), which notes that "[b]y its express language[,] 1692g(a) applies to the 'initial communication' from the debt collector." While this language, which Defendant quotes, does state the general statutory principle, it does not answer the question of what the "initial communication" is when, as here, there are multiple letters. Plaintiffs assert that it would be unfair to send a second letter that Plaintiffs might mistakenly rely upon if the earlier letter could be the "initial communication."[2]

While the case law on this subject is relatively scant, I find that the 2009 letter was the initial communication. Defendants cite *Higgins v. Capitol Credit Servs., Inc.*, 762 F. Supp. 1128, 1134-35 (D. Del. 1991), which states that by "disclosing some of Plaintiffs' rights in [a subsequent] notice, [a debt collector] defendant went beyond the disclosure requirements of the FDCPA." This would certainly seem to imply that the first of multiple letters was seen as the "initial communication." Other courts seem to have come to the same conclusion. *See, e.g., Johnson v. Cfs II, Inc.*, 20133 U.S. Dist. LEXIS 61017, at *16 (N.D. Ca. 2013) (where an earlier

---

[1] Counsel for Plaintiffs did not dispute that this letter was mailed and received during the October 9, 2013 hearing.
[2] Notably, however, counsel for the Plaintiffs admitted during the October 9, 2013 hearing that certain crucial language informing Plaintiffs of the right to dispute the debt contained within the 2009 letter was absent from the 2011 letter.

letter, had it been properly sent, would have been conclusive); *Wilson v. Suntrust Bank*, 2012 U.S. Dist. LEXIS 112525, at *5 (W.D. N.C. 2012) (where attaching a letter proving the initial communication occurred at an earlier date failed to dismiss the case *only* because the litigation was at the motion to dismiss phase rather than the summary judgment phase).

Because I find that the 2009 letter was the initial communication and that therefore the November 9, 2011 debt dispute was certainly not within the thirty day statutory timeline, Plaintiff's motion for summary judgment must be denied. But even if the 2011 letter, rather than the 2009 letter, was the "initial communication," denying the motion would still be appropriate. Plaintiffs claim that they received the October 2011 letter on October 10. As Defendant points out, and neither party disputes, October 10 was Columbus Day, and October 9 was a Sunday; mail would not have been delivered on either day. The latest the letter could have reached the Plaintiffs' mailbox, then, was October 8. Thus, unless an actual receipt rule applies to when the letter from SIWPC was received, the November 9 debt dispute sent on behalf of the Plaintiffs would be untimely even if the 2011 letter were the operative document.

There is little case law to provide conclusive evidence on whether an actual receipt rule would apply in the particular context of FDCPA collection materials, but numerous cases in the context of EEOC right to sue letters show that actual receipt rules are disfavored in this Circuit. *See, e.g,, Harvey v. City of New Bern Police Dep't*, 813 F.2d 652, 653-54 (4th Cir. 1987) (explicitly rejecting an actual receipt rule in the context of EEOC notice of right to sue letters); *Asbury v. City of Roanoke*, 599 F. Supp. 2d 712, 716 (W.D. Va. 2009) (same). Rejecting an actual receipt rule is eminently sensible, because such a rule encourages gamesmanship and could allow a party to defer the limitations period running seemingly indefinitely, which is surely contrary to congressional intent. Even negligence, rather than bad faith, upon the act of a plaintiff

in not checking their mall should not sensibly be allowed to in effect extend the limitations period. *See Watts-Means v. Prince George's Family Crisis Center*, 7 F.3d 40, 42 (4th Cir. 1993) (in the context of right to sue letters, "the limitations period is triggered . . . [when] the right-to-sue letter is available for pickup, and not when the letter is actually picked up"); *see also Lewis v. Conners Steel Co.*, 673 F.2d 1240, 1242 (11th Cir. 1982) ("There is no reason why a plaintiff should enjoy a manipulable open-ended time extension which could render the statutory minimum meaningless. Plaintiff should be required to assume some minimum responsibility himself for an orderly an expeditious resolution of his dispute.")

The only argument that Plaintiffs present in support of applying an actual receipt rule is to mention the "unsophisticated consumer" standard used in the context of FDCPA actions. According to Plaintiffs, an unsophisticated consumer would believe that they received the letter when they actually obtained it, not when it was delivered to their mailbox. But Plaintiff's reliance on the standard is misplaced. The unsophisticated consumer standard is used in determining how a court should read FDCPA collection materials, and does not have any bearing on the question of delivery requirements. *See United States v. National Fin. Servs.*, 98 F.3d 131, 136 (4th Cir. 1996) ("[w]hile protecting naïve consumers, the standard also prevents liability for bizarre or idiosyncratic interpretations of *collection notices* by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to *read* with care") (emphasis added); *see also Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1236 (5th Cir. 1997) ("[t]his standard serves the dual purpose of protecting all consumers, including the inexperienced, untrained, and credulous, from deceptive debt collection practices and protecting debt collectors against liability for bizarre or idiosyncratic consumer interpretations of *collection materials*) (emphasis added); *Peters v. Gen. Serv. Bureau, Inc.*, 277 F.3d 1051, 1055

(8th Cir. 2001) ("while the unsophisticated consumer test is meant to protect consumers of below average sophistication, it also involves an element of reasonableness that prevents bizarre interpretations of *debt collection notices*") (emphasis added).

I conclude that the unsophisticated consumer standard does not relate to questions of delivery, and thus does not imply that this court should adapt an actual receipt rule for debt collection notices. I therefore decline to apply an actual receipt rule to delivery of collection materials under the FDCPA. Instead, I find that the latest the materials could have been received at Plaintiffs' mailbox was October 8. Thus, even if the 2011 letter were the operative document, Plaintiffs' debt dispute letter on November 9 was untimely, and their motion for summary judgment would be denied under those circumstances as well.

In fact, because I find that the 2009 letter was the operative "initial communication" under 15 U.S.C. § 1692g(a), or alternatively that the November 9 2011 debt dispute was an untimely response to the October 2011 collection letter, summary judgment is appropriate in this case for the Defendant. Without a valid debt dispute, Defendant was within its rights to pursue foreclosure and did not in any way violate the FDCPA. Under Federal Rule of Civil Procedure 56(f), I may enter summary judgment in favor of a nonmoving party when the parties have been given adequate notice and opportunity to respond to all arguments.[3] Because I hold Defendant is entitled to summary judgment on these undisputed facts, Plaintiffs' motion for summary judgment is **DENIED** and summary judgment is **GRANTED** for the Defendant. As this eliminates Plaintiffs' final claim, Defendants' motion to certify judgment as final as to only two of the three Defendants is **DENIED AS MOOT**.

---

[3] At the October 9, 2013 hearing, counsel for both the Plaintiffs and Defendants concurred that there were no disputes of material facts in this case and that one party or the other would be entitled to summary judgment. Counsel further agreed that they were given adequate notice of the potential for a Rule 56(f) ruling, and felt as though they had the opportunity in the hearing on the present motions to discuss all issues in the case adequately.

## IV. CONCLUSION

Thus, Plaintiffs' motion for summary judgment will be denied and summary judgment will be entered for Defendant SIWPC instead. As this constitutes a final judgment in this case, Defendants' motion for entry of final judgment as to only two defendants will be denied as moot. An appropriate order follows.

Entered this __10th__ day of October, 2013.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE